UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED TECHNOLOGIES CORPORATION | : | CIVIL ACTION NO. 3:03CV1007 (JCH) |
| | : | |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| PARKER HANNIFIN CORPORATION | : | |
| | : | |
| Defendant. | : | DECEMBER 12, 2003 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR STAY**

The plaintiff, United Technologies Corporation ("United"), submits this memorandum in support of its motion to stay proceedings in this Court pending the arbitration of United's breach of warranty claims against the defendant which arise out of the same accidents and involve the same facts as the present case. For the reasons set forth below, the stay should be entered pursuant to the Court's inherent power to control matters appearing on its docket.

I.    **BACKGROUND**

On December 22, 1994, United and the Stratoflex division of Parker Hannifin Corporation ("Parker") entered into a Long Term Agreement ("LTA") which governed the sale of flexhoses by Parker to United's Pratt & Whitney division. These flexhoses are used for a variety of purposes in both military and commercial jet engines manufactured by Pratt & Whitney including supplying the engines with fuel. On August 6, 1997 and again on September 18, 1997, two F-16 fighter jets, owned and operated by the Republic of Korea Air Force ("ROKAF") and powered by Pratt &

Whitney engines equipped with Stratoflex flexhoses, crashed.  Investigations conducted by

ROKAF, the United States Air Force and United determined that both crashes were caused by

defective flexhoses manufactured by Stratoflex.  Specifically, the investigations found that

Stratoflex's use of ivory soap as a lubricant during the manufacture and assembly of the flexhoses

caused stress corrosion in the stainless steel wire braid which is used to give the flexhoses the

requisite strength, and that the corrosion caused hoses in the incident aircraft to burst thereby

cutting off the fuel supply to the engine and resulting in the crashes.

The LTA contains an Alternative Dispute Resolution ("ADR") provision[1] which mandates

that any dispute or claim based upon a breach of warranty be resolved by an executive level

negotiation, followed by mediation and then binding arbitration, if necessary.  The ADR provision

contains very strict deadlines to assure that disputes will be resolved as expeditiously and in as

cost-effective a manner as possible.

On May 20, 2003, United served notice upon Parker that it was invoking the ADR

provision of the contract with respect to damages incurred by United as a consequence of the

defective flexhoses.  On May 20, 2003, United also filed a Complaint in the Connecticut Superior

Court based upon the same underlying facts seeking recovery under the legal theories of

indemnification and negligence.  United filed the two factually similar actions simultaneously for

---

[1] The provision provides in pertinent part:  "Any dispute or claim based on a breach of
warranty arising out of this order shall be resolved exclusively in accordance with the procedures
set forth below…."  (Attached hereto as Exhibit A).

two reasons:  first, United wanted to protect itself against a possible argument by Parker that the

initiation of the ADR proceedings terminated a tolling agreement by the parties and thereby

rendered claims for indemnification and negligence untimely; and, second, United wanted to

preserve its right to seek recovery on all viable legal theories in the event that Stratoflex took the

position in the ADR proceedings that the indemnification and negligence claims were non-

arbitrable.

While the LTA specifies that the executive level negotiations take place within 30 days of

notice that the ADR procedures are being invoked, and although Parker had extensive knowledge

about United's claims as a result of its participation in the underlying investigations as well as

from documentation and information United had provided to Parker about the claims, United

agreed to delay the negotiation and respond to additional requests for information and documents

by Parker.  The executive level negotiation occurred on August 6, 2003.  The parties were unable

to settle the case at that time.

On September 19, 2003, United filed its Rule 26(f) conference report and requested that the

Court refer this matter for early resolution by mediation to a Magistrate Judge for the purpose not

only of settling the court case but also to satisfy the mediation requirement under the ADR

procedures.  Parker objected to this approach.

On October 15, 2003, the Court held a Scheduling Conference pursuant to Rule 16 and

directed the parties to provide it with a joint status report by October 29, 2003 regarding the

selection of a mediator.  Parker agreed to utilize Former Magistrate Judge F. Owen Eagan to mediate the warranty claims but again declined to include any issues pertaining to United's claims in this proceeding in that mediation.

Judge Eagan accepted the appointment on November 6, 2003.  The parties held their initial planning conference with Judge Eagan on November 17, 2003, and the mediation has been scheduled for the period January 7 – 9, 2004.  Now that the ADR process is moving forward again, and in the interest of conserving the Court's and the parties' resources, United respectfully requests that these proceedings be stayed until that process is concluded.  The ADR provision of the LTA requires that, should the dispute not settle at the mediation, a binding arbitration take place within six months thereafter, unless both parties agree to an extension.  Accordingly, it is anticipated that the arbitration, if necessary, will commence by July of 2004.

## II.    DISCUSSION

It has long been recognized that federal courts have the power to stay proceedings in appropriate circumstances.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 255 (1936).  This power exists even where the parties and issues in the two proceedings are not identical, although, in such circumstances, courts must use moderation in exercising their discretion.  Id.  This power has been recognized not only in connection with parallel federal court proceedings but

with concurrent federal and state court proceedings, Mottolese v. Kaufman, 176 F.2d 301 (1949),

as well as federal court proceedings and arbitrations, Nederlandse Erts-Tankersmaatschappij, N.V.

v. Isbrandtsen Company, Inc., 239 F.2d 440 (2d Cir. 1949).

In Mottolese, the court upheld a stay entered by the district court and refused to issue a

mandamus directing that court to proceed with a shareholder's derivative suit where there was

already pending at the time the federal court case was filed a consolidated state court action

brought by separate shareholders upon the same claims and against substantially the same

defendants.  In reaching this determination, the court noted that "[e]quity has always interfered to

prevent multiplicity of suits, and the same considerations which persuaded the state court to

consolidate the nine actions there pending, make equally desirable the course as near to that as the

law permits."  176 F.2d at 303.  See also Retail Marketing Network, Inc. v. Actmedia, Inc., 1996

U.S. Dist. LEXIS 22560 (D. Conn. 1996) (Nevas, J.) (court abstained from exercising jurisdiction

and stayed federal court Lanham Act case pending state court case based upon same facts but

different legal theories noting that stay will avoid piecemeal litigation of "same operative facts"

and that state court action was proceeding more quickly than the federal court case); Travelers

Indemnity Co. v. Monsanto Co., 692 F. Supp. 90, 92 (D. Conn. 1988) (Nevas, J.) (federal court

insurance coverage declaratory action stayed in deference to more comprehensive state court case

involving same claims and all interested parties; it "is the court's responsibility to discourage

duplicative and piecemeal litigation").

In the <u>Nederlandse</u> case, the court reversed the entry of a stay pending arbitration which had been based improperly upon the Federal Arbitration Act, 9 U.S.C. § 3 despite the fact that there were no arbitrable issues in the federal court proceeding, and remanded the case to the district court for consideration of whether a stay should have been entered pursuant to the Court's inherent power. The stay had been sought by the defendant in the federal court case which had been sued under a contract of guaranty by the plaintiff which claimed that it had not been paid for charter services it had provided to a third party. The plaintiff had also instituted arbitration proceedings against the third party as required by the underlying contract between the plaintiff and that party. In remanding the case for reconsideration of whether a stay should be granted under the Court's inherent power, the <u>Nederlandse</u> court noted that in addition to the power to stay federal court proceedings pending state court actions, "a stay may also be appropriate where the pending proceeding is an arbitration in which issues involved in the case may be determined." 339 F.2d at 441. The Court further noted that included among the factors whether to stay a federal action pending arbitration is consideration of whether the party seeking the stay has taken steps to hamper the progress of the arbitration proceeding and whether the arbitration may be expected to conclude within a reasonable time. <u>Id</u>. at 442.

An even stronger argument exists that the present case should be stayed. Unlike any of the decisions discussed above, the present case and the ADR proceedings involve identical parties and facts. The ADR proceedings are well under way, and the contract between the parties specifically

provides that those proceedings must conclude with a binding arbitration to take place within six months of the mediation. The resolution of the ADR proceeding will dispose of many if not all of the issues in this case and thus avoid piecemeal litigation. Indeed, it is well settled that the principals of res judicata and collateral estoppel apply to all legal and factual determinations made in an arbitration. Pike v. Medapproach, L.P., 266 F. 3d 78 (2d Cir. 2001); Catalano v. Applied Biometrics Products, Inc., 2003 U.S. Dist. LEXIS 14670 (S.D.N.Y. 2003). There can thus be no question that a stay pending the ADR proceedings is the most efficient and expeditious way to proceed with this matter at the present time.

In addition, there is no way that Parker can claim to be prejudiced by a stay. Parker has not commenced any discovery in this case. Indeed, Parker has taken the position in its Fourteenth Affirmative Defense that the claims in this case should be dismissed in their entirety as they are subject to arbitration. Moreover, United has done nothing to delay the ADR proceedings. To the contrary, it has sought to advance those proceedings at every available opportunity.

## III.    CONCLUSION

For all of the foregoing reasons, United respectfully requests that its motion to stay be granted.

-8-

PLAINTIFF,
UNITED TECHNOLOGIES CORPORATION


By _____

    Robert A. Brooks (ct00117)
    Charles W. Fortune (ct07528)
    David M. Bizar (ct20444)
    Day, Berry & Howard LLP
    CityPlace I
    Hartford, CT  06103-3499
    Telephone:  (860) 275-0100
    Facsimile:  (860) 275-0343
    E:Mail:  rabrooks@dbh.com
            cwfortune@dbh.com
            dmbizar@dbh.com

    Its Attorneys

## **CERTIFICATION**

This is to certify that the foregoing was sent on the 12th day of December, 2003 by first class mail, postage prepaid, to:

Mark Guilliani, Esq.
Mitchell E. Kallet, Esq.
Phyllis M. Divins, Esq.
Kern & Wooley, LLP
280 Trumbull Street
Hartford, CT  06103

David McGovern, Esq.
Robert M. Kern, Esq.
Kern & Wooley, LLP
10900 Wilshire Boulevard
Los Angeles, CA  90024-6501

_____
Robert A. Brooks
