FILED
2004 JAN 30 P 1:36
US DIS...

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED TECHNOLOGIES CORPORATION,
Plaintiff,

v.

PARKER HANNIFIN CORPORATION,
Defendant

PARKER HANNIFIN CORPORATION,
Third-Party Plaintiff,

v.

REPUBLIC OF KOREA AIR FORCE and
SAMSUNG AEROSPACE,
Third-Party Defendants.

DOCKET NO. 303CV1007JCH

**PARKER HANNIFIN CORP.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR STAY**

JANUARY 29, 2004

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR STAY

The defendant, Parker Hannifin Corporation ("Parker"), respectfully submits this Memorandum of Law in Opposition to the Plaintiff's Motion for Stay, filed on December 12, 2003.

## I. OVERVIEW:

The factual background and circumstances of this case are set forth in previously filed court documents. United Technologies Corporation ("UTC") now moves for a stay of its own federal action, which it filed contemporaneous with asserting its warranty claims against Parker under separate, contractual ADR. The ADR provision at issue calls for binding arbitration within six months, exposing Parker to damages in excess of $22 Million. UTC's Motion for Stay

***ORAL ARGUMENT REQUESTED***

comes after the court's December 9, 2003 ruling, granting Parker's Motion to Implead the Republic of Korea Air Force ("ROKAF") and Samsung Aerospace ("Samsung"), both of which are not parties to the ADR proceedings. This Motion For Stay also comes immediately on the heels of Parker's December 10, 2003 service of comprehensive discovery requests, seeking from UTC information previously withheld and important to Parker's defense and Third Party Actions.

UTC's goals with this Motion For Stay are readily apparent. UTC would like this complex action stayed so that it can move this case to private arbitration in less than six months, while denying Parker the procedural mechanisms available to it under the Federal Rules for (1) engaging in meaningful discovery and (2) pursuing and developing its Third Party Claims against ROKAF and Samsung (which, if Parker is successful, could significantly reduce, or expunge, any liability assessed against Parker in UTC's underlying claim).

UTC's tactics should not be countenanced by the court. UTC saw fit to set in motion this action, which has caused Parker to appear and expend resources in defending itself. UTC should not now be allowed to, essentially, cut Parker off from the protections and remedies only available in federal court because it is displeased with the posture of the case.

Moreover, from a perspective of substance (as discussed, *infra)*, UTC's attempt to stay this action is based on specious arguments, as well as case law that actually militates against a stay.

Finally, this court has previously found, in the context of granting Parker's Motion to Implead, that all the issues of this complex litigation should be decided together. As the court noted, this "will lead to a more efficient adjudication of the already complicated issues regarding whether [Parker] was indeed negligent and whether that negligence lead to [K-1 and K-2], or

whether negligence from another source was additionally responsible . . . [and the] federal rules favor this type of thorough and complete adjudication." Ruling on Motion for Leave to Serve Third Party Complaint [DKT NO. 9], dated December 9, 2003 (Hall, D.J.). Granting UTC's Motion to Stay would serve to undermine the court's ruling in this regard.

## II. <u>BACKGROUND</u>:

The relevant ADR provision is set forth in a Long Term Agreement ("LTA") between UTC (Pratt & Whitney) and Parker (through its Stratoflex division), by which Stratoflex supplied flexhoses for Pratt's military engine kits. *See* Exhibit to Plaintiff's Memorandum of Law in Support of Motion to Stay. The Plaintiff asserts that the LTA provides that any breach of warranty by Parker triggers ADR, culminating in binding arbitration. Plaintiff's Memorandum of Law, at 2. In May, 2003, UTC made a claim against Parker under the ADR provision of the LTA, based on its assertion that Parker's (Stratoflex's) manufacturing process for the flexhoses, which included the use of Ivory Soap as a lubricant, led to stress corrosion. This stress corrosion, according to the Plaintiff, caused an in-flight failure of the flexhoses and the K-1 and K-2 mishaps. Thus, UTC asserted a breach of warranty claim under the LTA, seeking to recoup monies it paid to ROKAF in settlement of claims arising from K-1 and K-2, as well as retrofitting costs. The amount of the warranty claim is in excess of $22 million.

On the same date UTC asserted a claim for ADR under the LTA, it also filed the Complaint in the instant action, alleging against Parker contractual indemnification based on the LTA, as well as common law negligence. *See generally,* Complaint. In connection with these claims, UTC is seeking damages that extend beyond those alleged in its ADR claim, including lost profits. *See* Complaint, at 12-13; *see also* Plaintiff's Report of Parties' Planning Meeting, at 4.

With the granting of Parker's Motion to Implead ROKAF and Samsung, Parker can now pursue its claims that the acts/omissions of these third parties (which were responsible for the assembly, installation, etc., of the K-1 and K-2 engines in Korea), to Parker's exclusion, were the proximate cause of the K-1 and K-2 mishaps. Parker has alleged against these Third Parties statutory apportionment of liability and common law indemnification claims. Both of these causes of action have the potential to significantly reduce, or completely expunge, Parker's liability exposure in connection with UTC's underlying causes of action in this matter regarding K-1 and K-2.

On December 10, 2003, Parker served on the Plaintiff comprehensive discovery requests in furtherance of its efforts to obtain evidence in defense of UTC's claims against it, and in furtherance of its efforts to obtain evidence in support of its claims against the Third Parties. UTC's Motion for Stay came two days after Parker served these discovery requests, and three days after the court granted Parker's Motion to Implead.

## III. DISCUSSION:

### A. PLAINTIFF'S ARGUMENTS IN SUPPORT OF MOTION TO STAY

The underpinning of the Plaintiff's argument is that this court, exercising its inherent power to control its docket, should stay these proceedings because the issues in the private ADR involve identical parties and facts. Plaintiff's Memorandum of Law, at 4 (citing Landis v. North American Co., 299 U.S. 248, 254 (1936)). Further, the Plaintiff argues that the ADR proceeding under the LTA will dispose of most of the issues inherent in the instant case, and would avoid piecemeal litigation, thus justifying a stay. *Id.*, at 7. The Plaintiff further argues that res judicata and collateral estoppel will apply to the arbitrator's legal and factual determinations. *Id.* Further, the Plaintiff argues Parker would not be prejudiced by a stay because it had not commenced any

discovery, and because, in its Fourteenth Affirmative Defense, Parker alleged that the federal action should be dismissed because the issues were subject to arbitration. *Id.* As discussed, *infra*, each argument falls short.

**B. ARGUMENT**

**1. Balancing of Interests Articulated by Supreme Court Supports Denial of Motion for Stay**

While it is certainly true that a court has the inherent power to stay an action, the United States Supreme Court in Landis (cited by the Plaintiff) clearly provides that a court should exercise judgment in deciding whether to issue a stay, which requires the weighing of competing interests to maintain an even balance between the parties. Landis, 299 U.S. at 254. Further, the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward. . . if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.*, at 255. The net result (as articulated by another case cited by the Plaintiff) is that a court exercises discretion in determining whether or not a stay is appropriate under the facts and circumstances of a particular case. *See* Mottolese v. Kaufman, 176 F.2d 301, 303 (1949) (cited on page 4-5 of Plaintiff's Memorandum of Law).

In light of the above, Parker respectfully argues that its interests in avoiding a stay outweigh the Plaintiff's interests in obtaining one. Parker has a significant interest in pursuing discovery against the Plaintiff, ROKAF and Samsung in this action. If this action were stayed, Parker would be completely denied discovery against ROKAF and Samsung, and would be forced to defend itself in the ADR proceeding (which includes binding arbitration in less than six months regarding a multiple million dollar claim) without the benefit of developing its defenses or asserting its affirmative claims against the Third Parties.

Further, a stay would result in a significantly limited opportunity for Parker to pursue discovery against UTC, since the scope of discovery under ADR arguably requires agreement by UTC. The record to date reflects UTC's unwillingness to provide meaningful discovery. The timing of UTC's Motion for Stay (triggered by receiving Parker's comprehensive discovery requests) and UTC's pro forma objections (save for UTC's objection based on the number of interrogatories served) to Parker's discovery requests are recent evidence of such unwillingness. *See* Plaintiff's Objections (dated January 16, 2004) to Defendant's First Set of Discovery, attached as Exhibit A. Indeed, UTC's tactic in moving for a stay is to force Parker to arbitration before it can develop, through court-ordered discovery in the instant case, its defenses to the underlying action and its affirmative causes of action against ROKAF and Samsung.

Moreover, the damage/prejudice to Parker that would be engendered by a stay (the denial of discovery; being forced to defend itself without the opportunity to pursue its claims against ROKAF and Samsung) requires UTC to "make out a clear case of hardship or inequity in being required to go forward [with the federal action]." Landis, 299 U.S. at 255. There is no such hardship. On a practical level, UTC's decision to wait over two years after settling with ROKAF before pursuing Parker counters the argument that going forward with this action (which would likely take longer than the arbitration) would result in inequity to UTC. Additionally, this court recognized the practicality of having the entire dispute (involving all Parties/Third Parties) resolved in one action when it granted Parker's Motion to Implead ROKAF and Samsung. The granting of a stay would derail the goal of this ruling, and would likely result in the type of "piecemeal litigation" to which UTC refers in its Motion for Stay.

**2. Plaintiff's Other Cited Cases Support Denial of Motion for Stay**

Other cases cited by UTC actually support a denial of its Motion for Stay and are markedly distinguishable from the instant case. For example, UTC relied on the holding of the Nederlandse case to show that an action can be stayed pending arbitration. Plaintiff's Memorandum of Law, at 6. However, the Second Circuit in this case clearly provided (in a previously-issued opinion on the same case [1] ) that the balancing interests in Landis, *supra*, applied to a court's consideration of whether a case should be stayed pending the outcome of even an arbitration. *See* copy of earlier Nederlandse decision, at Exhibit B. As discussed above, a Landis balancing weighs in favor of a denial of a stay.

Additionally, according to Nederlandse, a court should consider whether the pending arbitration will resolve issues that would be determined in the federal action of which a stay is being requested. Nederlandse, 339 F. 2d. at 441 (internal citations omitted). In the instant case, arbitration will only address the Plaintiff's warranty claims under the LTA. It will not resolve the issues of whether UTC will prevail on its contractual indemnification claim or its common law negligence count in the instant case. This is certainly true in light of the position UTC will most likely advance in ADR: that proof of a breach of warranty claim only requires a finding of non-conforming goods.[2] On the other hand, whether Parker has a contractual duty to indemnify UTC, or is liable under common law negligence, requires a finding of negligence on the part of

---

1 339 F.2d 440, 441-42 (2d Cir. 1964).

2 In fact, UTC recognized the distinctions between proving a breach of warranty claim under the ADR provision versus proving the indemnity and negligence actions in the instant case. *See* Plaintiff's Memorandum of Law at 3 (UTC brought instant action to "preserve its right to seek recovery on all viable legal theories in the event [Parker] took the position . . . that the indemnification and negligence claims were non-arbitrable); *see also* Plaintiff's Report of Parties Planning Meeting, at 4 ("The Indemnification provisions . . . may not be subject to arbitration under the agreement").

Parker and a causal connection between said negligence and UTC's claimed damages. *See* Excerpt of LTA, at Exhibit C. These determinations implicate questions of fact and law that exceed the scope of issues endemic to resolution of a warranty claim under the LTA.[3]

Moreover, the arbitration agreement under the LTA only applies to UTC and Parker. The issues raised in the instant action regarding the liability of ROKAF and Samsung would not be resolved in arbitration. Thus, a stay would not only run counter to Nederlandse, but would also be inconsistent with the court's previous ruling (in granting the Motion to Implead) that Parker's claims against the Third Parties should be litigated with UTC's underlying claim.

The Mottolese case (cited by the Plaintiff on Page 5 of its Memorandum of Law) does not support a stay in the instant case and is readily distinguishable from it. 176 F. 2d 301 (1949). In Mottolese, the Court indicated that a federal suit, brought subsequent to the filing of a state action, may be stayed. *Id.*, at 303. In so holding, the prime consideration before the court was the inconvenience a Defendant would face in being forced to defend two separate law suits in

---

[3] Allegations of a contractual indemnification claim must be supported by the terms of the contract. Morel v. Unicco Service Company, et al, 1995 Conn. Super. LEXIS 3388. Where there is definitive contract language, the determination of what the parties intended is a question of law. Tallmadge Brothers, Inc. et al v. Iroquois Gas Transmission System, L.P., 252 Conn. 479, 495 (2000). The intention of the parties is determined by a fair and reasonable construction of the language used. John F. Epina Realty, Inc. v. Space Realty, Inc. et al, 194 Conn. 71, 77-78 (1984). Parties can contract that the duty to indemnify only attaches upon a finding of negligence by the indemnitor. Frederick V. Kroll v. The Stop & Shop Companies, Inc., 2001 Conn. Super. LEXIS 1789 (recognizing that indemnification clause can limit duty to indemnify where the language requires "that there be negligence on the part of [the indemnitor] for indemnification to be had."); Hiram Donar v. King Associates, Inc., 67 Conn. App. 346, 348 (2001) (recognizing validity of indemnity clause between general contractor and subcontractor, providing that subcontractor's duty to indemnify and hold harmless general contractor triggered "only to the extent caused in whole or in part by negligent acts or omissions of the subcontractor"). Especially in the "context of commercial contracts, [courts] assume that definite contract language is the best indication of the result anticipated by the parties in their contractual arrangements. Tallmadge Brothers, Inc., et al v. Iroquois Gas Transmission System, L.P., 252 Conn. at 479.

different places, both involving the same claim. *Id.* The court adhered to the established principle that, in desiring to stay the later federal suit, a Defendant has the burden of showing why equitable considerations should prevent the Plaintiff in the federal action from proceeding. *Id.* The instant case is clearly distinguishable. The Plaintiff, UTC, is seeking to stay an action that *it* had brought, itself. None of the equitable considerations contemplated in Mottolese can legitimately be invoked by UTC. UTC cannot argue it would be unduly burdened by prosecuting a federal action contemporaneous with arbitration, especially since UTC was the one to make the decision to file the action in the first place. This court has rejected UTC's similar argument in this regard, in connection with its opposition to Parker's Motion to Implead. Rather, the actions of UTC demonstrate that this Motion for Stay is a tactic to impede and limit discovery, and to avoid the comprehensive and final resolution of all disputes engendered by the facts of this case.

In addition, Mottolese is distinguishable from the instant case because, as the court noted, the party seeking the stay was not the real party in interest. *Id.*, at 302. UTC would not suggest it is not the real party in interest in seeking the stay. Further, Mottolese requires an exercise of discretion in determining whether to stay a later federal action, citing Landis. *Id.*, at 303. As discussed above, the principles articulated in Landis support a denial of the Motion for Stay. In addition, the court in Mottolese clearly pointed out that a stay of a federal action would only be appropriate if both the state and federal action involved the same claims. *Id.*, at 301. As discussed at length, *supra*, the contractual indemnification and negligence counts in the instant case are distinct and different from the warranty claim in the arbitration proceeding. Thus, the two actions do not involve the same claims. Further, the arbitration does not encompass Parker's claims against ROKAF and Samsung.

Finally, UTC's reliance on Traveler's Indemnity Company v. Monsanto Company [4] is an example of the disingenuous nature of this Motion for Stay. In Traveler's Indemnity, the Plaintiff/insurer filed a declaratory judgment action in state court for a determination of whether it had a duty to provide coverage to the Defendant for environmental clean-up costs. 692 F. Supp. at 90. A day later, the Defendant filed state actions against the Plaintiff and 37 other liability carriers, seeking compensatory damages and a declaration of its rights to a defense and indemnity from these insurers. *Id.*, at 91. The Defendant moved to stay the federal action, pending resolution of the state case in Delaware. In granting the stay of the federal action, the court articulated the longstanding rule that a federal court proceeding is not "barred by the existence of a parallel state court action . . .[and] . . . the federal court cannot dismiss or stay the federal case in deference to the state action except in exceptional circumstances." *Id.*, at 91. (internal quotations and citations omitted).

The Traveler's Indemnity court articulated a number of factors in determining whether exceptional circumstances existed to stay the federal action, including the following: the order in which jurisdiction was obtained by the concurrent form; inconvenience of the federal forum; the avoidance of piecemeal litigation in favor of comprehensive disposition of disputes, especially where concurrent litigation might result in inconsistent disposition; the role of federal law in the federal case; and the adequacy of the state court proceedings to protect the "federal case Plaintiff's" rights. *Id.*, at 91-92. In granting the stay, the court noted that the state action was more comprehensive than the federal action, and further noted that the state action would resolve all pertinent issues, rather than the narrow issues that would be decided in federal court. *Id.*, at

[4] 692 F. Supp. 90 (D. Conn. 1988).

93-94.

The instant case is clearly distinguishable from Traveler's Indemnity on a number of grounds. First, in the instant case, UTC is the "Plaintiff" in both the federal action (for which it now seeks a stay) and the arbitration; Parker is the "Defendant" in both actions. In Travelers Indemnity, the Defendant seeking the stay in the federal action was the Plaintiff in the state action, and moved to stay the federal action in favor of its own state action. Further, the federal action in Traveler's Indemnity was a declaratory relief action brought by an insurer, which implicated issues that were narrower than the comprehensive issues in the parallel state action. In the instant case, the federal action is clearly not a declaratory relief action.

More importantly, however, it is irrefutable that the issues in the federal action are far more comprehensive and complex than the issues in the arbitration. The federal action encompasses legal and factual issues regarding the conduct, actions and responsibilities of UTC, Stratoflex, ROKAF and Samsung. Further, as discussed above, the legal and factual issues relative to disposition of the claims in the federal action exceed the narrower issues relative to the arbitration, which are limited to a warranty claim between UTC and Stratoflex only.

In addition, the potential for inconsistent results certainly exists if the instant case is stayed. The potential for such an inconsistency was a factor the court considered in granting the Motion to Implead. If this action is stayed, and Parker is forced to defend the warranty claims stemming from the allegedly defective flexhoses in arbitration, without the benefit of discovery and the ability to seek apportionment and indemnification from ROKAF and Samsung (which could reduce or expunge any damages assessed against Parker in the underlying action), there is clearly the potential for an inconsistent result. The net result is that application of the Traveler's

Indemnity holding supports a denial of UTC's motion to stay the federal action.

**3. Prejudice to Parker**

The Plaintiff's argument that a stay of the instant action would not result in prejudice to Parker is plainly wrong. First, as discussed at length, *supra*, there would be significant prejudice to Parker regarding the ability to conduct discovery against all parties and pursue its claims against ROKAF and Samsung. It should also be noted, contrary to UTC's assertion, Parker had, indeed, commenced discovery prior to Plaintiff's filing of its Motion to Stay (albeit two days prior).

Further, UTC's assertion that Parker's Fourteenth Special Defense (Plaintiff's action subject to dismissal because of the arbitration provision) demonstrates a lack of prejudice to Parker is simply incorrect and an attempt to deflect the court from its pertinent considerations. The Federal Rules of Civil Procedure unequivocally allow for alternative pleading of special defenses. *See* Ventimiglia v. Friedman, 1989 U.S. Dist. LEXIS 12910, *8 (S.D.N.Y. 1989) (citing Fed. R. Civ. P.8(e)(2), providing that alternative pleading, including special defenses, "is specifically authorized"). Connecticut law recognizes alterative pleading as well. *See* Burgess v. Turner, 1999 Conn. Super. LEXIS 716, *2 (J.D. New Haven, at New Haven, March 9, 1999) (Attached as Exhibit D). Thus, Parker's authorized use of procedural rules allowing for alternative pleading of special defenses is proper, and should not be construed against it in the context of this Motion for Stay and Parker's opposition to it.

4. **<u>The Doctrines of Res Judicata and Collateral Estoppel Do Not Support Granting the Plaintiff's Motion for Stay</u>**

Finally, UTC argues, without substantive analysis, that because res judicata and collateral estoppel apply to arbitrations, staying the federal action is appropriate. Plaintiff's Memorandum of Law in Support of Motion to Stay, at 7. Consideration of whether these doctrines would apply is premature. Moreover, review of the case law reveals that the Plaintiff's arguments are superficial at best, and actually support denial of the Motion for Stay.

Under Connecticut Law, res judicata and collateral estoppel must be pleaded as a special defense. The <u>Cadle Co. v. Gabel</u>, 69 Conn. App. 279, 293 n.15, 794 A.2d 1029 (2002). Both doctrines only apply in situations to preclude litigation of claims that have ***already been decided on the merits***." <u>Nancy G. v. Department of Children & Families</u>, 248 Conn. 672, 681, 733 A.2d. 136 (1999) (internal quotations omitted) (emphasis added). Res judicata bars a subsequent claim in situations ***where there is a former judgment on the same claim, rendered on the merits***. <u>DeMilo & Co. v. Commissioner of Motor Vehicles</u>, 233 Conn. 28, 292, 659 A.2d. 162 (1995) (emphasis added). Collateral estoppel "prevents a party from re-litigating an issue ***that has been determined in a prior suit***." <u>Bell v. Barker Burger, LLC</u>, 2003 Conn. Super. LEXIS 559, *6 (J.D. New Britain, at New Britain, February 20, 2003) (internal citations and quotations omitted) (emphasis added) (Attached as <u>Exhibit E</u>). *See also* <u>Catalano v. Applied Biometric Products, Inc.</u>, 2003 U.S. Dist. LEXIS 14670, *13 (S.D.N.Y. 2003) (cited by Plaintiff, holding that collateral estoppel bars re-litigation of an issue raised, litigated, and **actually decided by judgment in prior proceeding**).

Moreover, under Connecticut law, because both res judicata and collateral estoppel are affirmative defenses, the appropriate means of determining whether they apply is in the context of

a motion for summary judgment. Bell, 2003 Conn. Super. LEXIS 559, *9.

In light of the foregoing, the Plaintiff's reliance on these doctrines in support of its Motion for Stay is misplaced and premature. There has been no adjudication or decision on the merits of any of the Plaintiff's claims under ADR. Thus, there is no record for the court to determine whether res judicata or collateral estoppel would apply to bar the federal action. The Plaintiff's assertion regarding application of these doctrines is mere speculation at this point, as well as a further attempt to take emphasis away from those issues truly germane to the court's ruling on the Motion for Stay.

Moreover, the Plaintiff's cited case law supports denial of the Motion for Stay, to the extent it is based on res judicata and collateral estoppel arguments. The Second Circuit noted, in Pike v. Freeman, that in order for res judicata to apply, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." 266 F.3d. 78, 91 (2d. Cir. 2001) (Plaintiff's Memorandum of Law, at 7).

Applying the Pike factors above, there has been no adjudication on the merits of any of the Plaintiff's claims under arbitration. Further, the Plaintiff's causes of action in the instant case, as discussed above, involve adjudication of facts and issues beyond the scope of arbitration. Thus, arbitration would not result in adjudication on the merits of the Plaintiff's breach of contractual indemnity and negligence claims in this case.

In fact, the Pike court, itself, was faced with determining whether res judicata barred an arbitration party's subsequent indemnification claim brought in federal court, seeking recoupment

of costs associated with being found liable in the arbitration. 266 F.3d. at 91. The court found that res judicata did not bar this claim. *Id.* In so ruling, the court found, applying the "transaction test" applicable to res judicata, that the contract claims under the arbitration agreement were based on conduct prior to the institution of the award against the party seeking indemnification; in comparison, the indemnification claim did not arise until after the award was granted. *Id.*, at 92. Thus, the "indemnification claims [were] not barred by the doctrine of res judicata." *Id.*

In the instant case, UTC's claim for breach of warranty arose out of alleged acts and/or omissions of Parker during the manufacturing process of the flexhoses. In comparison, UTC's claim for indemnification, as asserted in the instant case, necessarily encompasses the facts surrounding its settlement of ROKAF's claim stemming from K-1 and K-2. Thus, according to Pike, res judicata would not bar UTC's indemnification claim in the instant action.

## IV. CONCLUSION:

Arguments advanced by UTC in its Motion for Stay are superficial and not supported by case law, including case law cited in its own Memorandum of Law. Thorough evaluation of these cases demonstrates as much, and reveals the transparent nature of UTC's strategy in seeking a stay.

In light of the factors articulated by the Supreme Court concerning a court's power to stay an action, Parker's interests in pursuing discovery in federal court, as well as its interest in pursuing its Third Party claims, outweigh UTC's interest in staying this action. Further, UTC cannot "make out a clear case of hardship or inequity" in being required to go forward with the instant case. Landis, 299 U.S. at 255.

Moreover, the legal and factual issues inherent in the Plaintiff's causes of action against

Parker in the instant case are more comprehensive than those pertinent to the breach of warranty claim. Likewise, the claims and remedies sought by the Plaintiff in the instant case are distinguishable from, and more expansive than, those applicable to UTC's breach of warranty claim. Further, ROKAF's and Samsung's potential liability would not be resolved in the arbitration. The net result is that arbitration would not resolve all issues to be determined in the federal action. This truth strongly militates against a stay.

Additionally, a stay would certainly prejudice Parker, in that Parker would be precluded from conducting meaningful discovery against all parties and pursue its claims against ROKAF and Samsung. Contrary to the assertions of UTC in its Motion to Stay, Parker has, indeed, commenced such discovery with respect to the Plaintiff. Further, the fact that Parker's Fourteenth Special Defense raised the issue of dismissal based on arbitration is a red herring. Both the Federal Rules of Civil Procedure and Connecticut state law authorize alternative pleading of special defenses. This rule inherently recognized the strategic necessity behind alternative pleading. It would be inconsistent with federal and state law to find that alleging this special defense was tantamount to Parker's consent to a stay of this action.

Finally, whether or not res judicata and collateral estoppel would prevent re-litigation of some or all of the issues in the arbitration should not be considered by the court in determining whether a stay is warranted. These doctrines are special defenses that should be raised in the context of summary judgment. More importantly, there has been no final adjudication of any claim or any issue, such that these doctrines would be triggered. Finally, as discussed at length, even if it were appropriate to consider whether res judicata and collateral estoppel should apply to an arbitration award, application of these doctrines would not lead to a barring of this federal

action.

KERN AND WOOLEY, LLP

By: ______________________

Mark R. Giuliani
CT Federal Bar No.CT16024
280 Trumbull Street
Hartford, CT 06103
860-246-9700

Robert M. Kern
CT Federal Bar No. CT25058
David C. McGovern
CT Federal Bar No. CT25059
KERN AND WOOLEY, LLP
10900 Wilshire Blvd., 11th Floor
Los Angeles, CA 90024
310-824-1777

Attorneys for Defendant,
Parker Hannifin Corporation

Dated: January 29, 2004

**CERTIFICATION OF SERVICE**

This is to certify that on January 29, 2004, a copy of the foregoing **Memorandum of Law in Opposition to Plaintiff's Motion for Stay** was sent via facsimile and first class mail to the following recipients:

Attorneys for Plaintiffs:
Charles W. Fortune
David M. Bizar
Day, Berry & Howard LLP
CityPlace I
185 Asylum Street
Hartford, CT 06103

Mark R. Giuliani